Next matter is Janice Herman v. Marvin Hilton, et al., and for the appellant, Mr. O'Hara, for the affidavit, Mr. McDermott. You may proceed. Thank you. Good afternoon. May it please the court, counsel, my name is Patrick O'Hara and I'm here to represent Janice Herman, the appellant. There are really two issues before this court today. One is whether the Logan County Circuit Court erred in denying Herman's motion to amend the remedy of her amended complaint to conform to the proof rendered at trial pursuant to 735 ILCS 5-2-617. And the second issue is whether the Logan County Circuit Court erred in denying Herman's motion for entry of a judgment in her favor and against Linda Brooks, defendant, pursuant to 740 ILCS 160-9B, which is the Uniform Fraud Transfer Act, which I would like to refer to as the UFTA for purposes of ease of articulation. Now, the reason Herman is pursuing this avenue is because the Disappellate Court on November 3, 2011, had issued a Rule 23 order which provided, quote, Herman may avoid the conveyances from Marvin Hilton to Linda Brooks to the extent necessary to satisfy her claim as a creditor, citing the UFTA Section 8A1. The statute UFTA in Section 9 refers to Section 8 of the UFTA. It provides that to the extent a transfer is voidable pursuant to Section 8, and that's exactly what this court found in its Rule 23 order, that the creditor may recover judgment for the value of the asset transfer. In this case, it was marital residence and some curtilage consisting of some acreage in Logan County, as well as $127,000 and some change in terms of liquid assets. It provides that the creditor may recover judgment for the value of the assets transferred as adjusted under Subsection C, which is not applicable here, or the amount necessary to satisfy the creditor's claim, which the claim was $125,000, which the Logan County court found. How does your client attain creditor status without reliance on the Probate Act? Because a claim is defined in the UFTA. A claim is defined as a means, a right, payment, whether or not the right is reduced to a judgment, liquidated or unliquidated, fixed, contingent, matured, unmatured, disputed. Well, how does your client get the right? Well, I think the right is because this court found in its Rule 23 order that that right can be gleaned pursuant to the Illinois Married Persons Act, which provides that a spouse can be jointly and severally liable for the caretaking expenses that is incurred by a decedent. And this court found that there was no distinction between the statutory claim against the spouse with regard to... Did this court say that your client was not a creditor of Dortha? I don't think it went that far. I didn't see that in the Rule 23. It did indicate that it was a creditor of Mr. Hilton. All right, let me rephrase. Is your client a creditor of Dortha? Well, it was a potential creditor. It is a creditor pursuant to the UFTA. I guess it's how you define creditor. I think pursuant to the UFTA, certainly it was a creditor. Because it's not a mature claim, but it certainly was a claim pursuant to that statutory provision. But the fraudulent transfer action was not against the estate. It was against Mr. Hilton and Linda Brooks. So certainly it was a creditor. A creditor is defined in the UFTA. Well, the reason I keep asking is because there's a couple provisions of the Probate Act that could be applied. Your client was a representative, a guardian. And then there is the section of the Probate Act that allows a relative to make a claim when they're taking care of a disabled person for a year. But you don't rely on either of those, actually, do you? We relied only on the basis that that was the potential claim that made us a claimant and a creditor pursuant to the Uniform Fraudulent Transfer Act. I just don't get how you are a creditor or a claimant, or whatever terminology you want to use, unless you use the Probate Act to establish that, and yet you failed to do that. Well, again, that would have been sort of brought up with regard to the Rule 23 order, I believe. But I don't think it's necessary, given the broad definition in the Uniform Fraudulent Transfer Act, to have done that, quite frankly. Because, as I say, it's a very broad definition. There is no condition preceding it. Indeed, one of the arguments of Brooks is that there is a section in the Uniform Fraudulent Transfer Act that requires a reduction to judgment before one gets a remedy. And that's in Section 8B of the Act. Section 8B of the Act says, if a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the assets transferred or its proceeds. Well, that would be the Probate Act, as such, because you're talking about an in-rem action going after the particular assets. But the section having to do with rendering a judgment against the transferee, the first transferee of a fraudulent transfer, doesn't require that. Indeed, the fact that that condition preceding it is set forth in 8B shows that the drafters knew how to draft that particular condition preceding it. And they certainly could have put in Section 9B that, in order for a creditor, pursuant to the Uniform Fraudulent Transfer Act, to get a judgment against the first transferee, had to get a judgment first. But they didn't. The drafters indicated that, to the extent a transfer is voidable, and this court's already found that those transfers were voidable, then that creditor may obtain a judgment for the value of the amount transferred against the first transferee. Well, that's exactly what happened here, is that we're seeking a judgment for the amount of the claim. It's either the amount of transfer or the amount of the claim, whichever is less. And here, the amount of the claim is less than what this court's already found was fraudulently transferred. This court found nearly, I'd say, certainly in excess of $180,000, $190,000 of transfer. The claim was $125,000. And so Ms. Herman is entitled to a judgment, pursuant to the clear, unambiguous provisions of Section 9B of the UFTA, to have a judgment against the first transferee, Ms. Linda Brooks. And we sought that expressly from the Logan County Circuit Court. The Logan County Circuit Court took Ms. Brooks and her counsel's argument and indicated that Linda Brooks was not entitled to any remedy except in the context of the probate. But we're not seeking a judgment or a claim in the probate proceedings. We're not even seeking against those particular assets anymore because the statute doesn't indicate that we have to. We're entitled to – indeed, there's a reason for that, I'm certain, is that the UFTA was drafted in such a way in the event that the first transferee wasted or the amounts transferred were fungible, like cash would be. And so it makes perfect sense that if the transferee, the first transferee, is complicit in the fraudulent transfer and that there's no adequate consideration, therefore, that they should be liable for that conduct, for that act, as a personal judgment against them for the amount transferred and the amount of the claim. That's what we're seeking. There's no question that we've proved our entitlement to that as a matter of substance and evidence. There's a report of proceedings on file with regard to this proceeding that indicate that Ms. Herman cared for her 100% disabled mother for more than three years while she was born and disabled without any payment whatsoever. And so the statute now provides for a minimum of $180,000.00. At the time that this occurred, the statute said a minimum of $100,000.00. Well, again, that refers back to the Probate Act. It certainly does, but that's what is underlying the claim pursuant to uniform – Well, I guess I'm having a hard time – Well, it's interesting you're not – you're not using the Probate Act. You're using the UFTA, but yet you're relying upon the Probate Act to determine the amount of the claim. It can be deemed either a non-mature claim or a claim that hasn't been rendered to judgment. It fills the bill with regard to the definition of claim and creditor under the UFTA. There's no condition preceding to that effect. Certainly, if there were, we would have followed that. But I think that Ms. Herman can rely upon the statute to indicate that she didn't need to do that. Indeed, if there was the language that was in Section 8B, certainly she would have rendered herself to a judgment. But I know of no case in this jurisdiction or in the 30 other states that has a Uniform Fraud and Transfer Act that requires some sort of condition preceding in terms of rendering a claim to a judgment or – I think Brooks' attorney refers to it as validating it or what have you. It just simply says that if you've got a potential claim and you prove that claim in a forum with regard to a complaint involving the UFTA, then you are entitled to the extent that the transfer is voidable to a judgment against the first transferee. That's exactly what occurred here. Exactly what occurred here. Now, the only distinction is that in our complaint, we asked that the assets be transferred to the estate of Dorothy Hilton. Now, Ms. Herman sued not only as the representative of the estate of Ms. Hilton, but she also sued individually. There's no question in the complaint, the amended complaint to that effect. So the only thing that's skewed here is the remedy clause set forth, the wherefore clause in the complaint. And it simply asks that the $125,000 be given to the estate of Ms. Hilton. Well, we asked once the Rule 23 order was issued, we asked the court to allow us to amend the judgment pursuant to the Civil Practice Act, Section 5-2-617. And that is a mandatory provision. It indicates that seeking the wrong remedy is not fatal. Now, what Brooks and her counsel want to do is to make it fatal. They want to trump the statute and say, oh, that's fatal. But it isn't fatal. It indicates that it should follow the proof of trial. And we simply ask that the remedy clause be switched from giving the $125,000 to the estate of Dorothy Hilton to the person who was suing individually and who was really wrong by the fraudulent transfer. And that is none other than Plaintiff Janice Herman. And so it follows directly from the statute. The court denied that motion. And we made a specific and explicit motion to that effect. We believe that's an error on the part of the Logan County Court. We think it's error for the court to have entered a judgment, certainly for Dorothy Hilton, because obviously she's deceased. So clearly the docket entry is wrong in that regard. She couldn't have a judgment entered on her behalf. Presumably, as they say, the court met the Dorothy Hilton estate. But this court had already found that the transfer of assets from her estate by Mr. Hilton, by a power of attorney, was okay. It legitimized that particular transfer. And so certainly the Dorothy Hilton estate was not a creditor of Mr. Hilton or of Linda Brooks. So Dorothy Hilton's estate could not be a claimant in the context of the UFTA. Because it wasn't a creditor. That's certainly a conditioned precedent, proceeding to being a claimant or a creditor, is that you have to have a claim against the person, the debtor. Once this court found that the transfer of assets pursuant to the power of attorney from joint tenancy of Mr. and Mrs. Hilton to Mr. Hilton singly by Mr. Hilton was okay, was legal and was not under influence, her estate didn't have a claim. She's not a creditor. Certainly Ms. Herman still had a claim because she had an unmature, not reduced to judgment claim for custodial care of her mother during those last three years of her life. And that made her a creditor of Mr. Hilton. And so she sued Mr. Hilton. And she sued Linda Brooks. And Mr. Hilton passed away during the proceedings. And so the only people left, now Mr. Hilton, there was no substitute of parties pursuant to statute, as I pointed out in the brief. So Mr. Hilton's estate is not before this court. And not before the Logan County Circuit Court. So the court's entry of a judgment in favor of that estate is obviously error too because you can't enter a judgment in favor of an entity that's not before the court. So the only parties that are left, and again I think I pointed out that when there are parties that become deceased that the statute provides that the action will proceed against those parties that remain. Well, the parties that remained were none other than Janice Herman individually and Linda Brooks individually. And the trial proceeded on that basis. And there was a presentation of evidence. There was a cross-examination. There was every opportunity of defendant to either put in a defense or mitigate damages. And they chose to take whatever tact they did. And it is uncontested that Ms. Herman provided the services for her disabled mother without compensation for those better than three years at the end of her life. So she's certainly entitled to a claim pursuant to the Uniform Fraudulent Transfer Act. And so what it all devolves down upon is that when we ask the court, number one, to allow, to remedy, to fix or amend the remedy clause of the complaint, it should have allowed that pursuant to 617 because that is mandatory. It also should have entered an order once that remedy was amended to allow a personal judgment pursuant to the unambiguous and expressed provisions of Section 9B of the UFTA for a judgment to the extent of the claim against the first transferee, Mrs. Brooks. When it refused to do that, we believe that that was error. Now, one of the reasons purported by Mrs. Brooks that this should not happen is that she's purporting to protect the very estate that she has been found to have made fraudulent transfer. She says that somehow the creditors of Ms. Hilton's estate should be protected. That has nothing to do with her. And it certainly has nothing to do with the Uniform Fraudulent Transfer Act. There's nothing in there that says there's a prioritization of creditors. It just simply says a creditor may receive a judgment for the amount of the claim or the amount transferred, whichever is less. And that's the relief that we're asking this court to enter on behalf of the appellant, Ms. Herman. Are there any other questions? Thank you. May it please the Court, Mr. O'Hara. I'm Kevin McDermott, the attorney for the appellee, Linda Brooks. Your Honors, my argument on behalf of Ms. Brooks is fairly simple. I just want to provide a short summary. It's documented in my brief. Ms. Herman used various aspects of the custodial care provisions of the Illinois Probate Act to develop her claim in the amount of $125,000. But what she didn't do is she didn't follow through with the remainder of the Act. And that the remainder of the aspects of the Custodial Care Act require her to file a claim in probate court, have a claim noticed up and heard, and obtain a judgment if appropriate. She didn't do that. Ms. Herman wants the benefit of the claim provided by the Custodial Care Act, but doesn't want to conform to the statutory requirements to obtain a judgment. Ms. Herman is not a creditor with an enforceable claim until such time that she has pursued this custodial care claim in the appropriate manner through the probate court. It just hasn't been done. The second amended complaint filed several years ago by Ms. Herman in this matter, which is the basis for this action, does not include a pleading requesting a custodial care claim. In fact, it says there's a reference to Ms. Herman's right to file a statutory claim against the estate of Dortha M. Hilton. That was never done. My position, on behalf of my client, is the ruling of Judge Feeney should be upheld. Answer any questions, of course, if you have any. I'm happy to be here. Thank you. Very briefly. Again, the fact that the Custodial Care Act was invoked in the UFTA count of the amended complaint was to give Ms. Herman the status as creditor in the UFTA complaint. There's also substantive averments in the complaint that indicates that she did indeed care for her mother the last three years of her life, that her mother was 100% disabled, that she was not compensated. So the substantive averments are there as well. The citation of the Custodial Care Act was to show that there is an unmature claim, pursuant to the UFTA, that's not rendered to judgment, that gave her the status of creditor pursuant to that particular act. Not the probate act. We weren't suing or making a claim in the probate. We were asking for relief pursuant to the UFTA, and that was sufficient pursuant to the unambiguous terms of the statute to give her that status. What Mr. McDermott on behalf of Ms. Brooks wants us to do is to commence new broils and straws far remote, to quote Shakespeare's Henry IV. That doesn't make sense to me, to have another forum, to have this evidentiary proceeding all over again in terms of the proof of bringing in the caretakers that testified on behalf of Ms. Herman as to the care that she provided, and to give Ms. Brooks another opportunity to present any defenses that she could have presented in the first forum. It doesn't make any sense to have a duplication. Indeed, if we want to take it to its absurd end, there should have been, according to Brooks' logic, should have such an action not only in Mrs. Hilton's estate, but should have it in Mr. Hilton's estate. Because he pre-deceased the proceedings that took place in Logan County with regard to the substantive evidentiary proceeding. So that doesn't make sense to have three proceedings to prove one claim pursuant to the Uniform Frauds and Transfer Act. So we would respectfully ask that the court reverse the decision of the Logan County Circuit Court and allow the remedy to be amended accordingly and to enter judgment for the sum of $125,000 plus costs to Janice Herman and against Linda Brooks. Thank you. Thank you, counsel. We'll take this matter under advisement and stand in recess until the readiness of the next case.